The STATE ex rel. MAST

v.

INDUSTRIAL COMMISSION of Ohio et al.

[Cite as *State ex rel. Mast v. Indus. Comm.*, 193 Ohio App.3d 650, 2011-Ohio-2865.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–278.

Decided June 14, 2011.

Mitchell A. Stern, for relator.

Michael DeWine, Attorney General, and Charissa D. Payer and John Smart, Assistant Attorneys General, for respondent Industrial Commission of Ohio.

KLATT, Judge.

{¶ 1} Relator, Leona A. Mast, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio, to vacate its order denying her request for an R.C. 4123.57(B) scheduled-loss award for the surgical amputation of her left great toe and to enter an order granting compensation.

{¶ 2} Relator sustained traumatic amputations of her left thumb, left index finger, and left long finger in an industrial accident. Her claim was allowed for the loss of these digits. Relator received a scheduled-loss award equivalent to the loss of her entire left hand because she lost two or more digits on the same hand. R.C. 4123.57(B).

{¶ 3} Subsequently, relator's doctor completed a C–9 form requesting that the bureau authorize a left-great-toe-to-left-thumb transplant "to improve apposition of the digits and improve functionality of the hand." The surgery was successfully performed. Following reattachment and recovery, relator had a viable left thumb with significantly improved left-hand function. However, because of the transplant, relator was now missing her left great toe.

{¶ 4} The bureau issued an order allowing the claim for "amputation left big toe" and that order was not administratively appealed. Thereafter, relator moved for an R.C. 4123.57(B) scheduled-loss award for the loss of her left great toe. Both the district hearing officer and staff hearing officer denied relator a scheduled-loss award for her left great toe. Thereafter, relator filed this mandamus action.

{¶ 5} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended. Although acknowledging that with respect to the left thumb and left great toe, there were two amputations, the magistrate noted that there was the loss of only one of these digits due to the surgical transplant. Finding this factual scenario analogous to that presented in *State ex rel. Qiblawe v. Indus. Comm.,* 96 Ohio St.3d 347, 2002-Ohio-4759, 774 N.E.2d 1215, the magistrate found that the commission properly denied relator a scheduled-loss award for the left great toe. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 6} Relator has filed objections to the magistrate's decision. Relator argues that *Qiblawe* is distinguishable on its facts and that she is entitled to a scheduled-loss award for the loss of her left great toe under the statute. We agree.

{¶ 7} In *Qiblawe,* the claimant had her index finger surgically transplanted to the site of another finger that had been lost in an industrial accident. The transplant was successful. Following reattachment and recovery, the claimant was missing only one finger. Although *Qiblawe* involved two amputations, the court determined that she was only entitled to receive a scheduled-loss award for the loss of one digit because the other digit was successfully transplanted with good functionality. In reaching this result, the court relied upon the rationale set forth in *State ex rel. Welker v. Indus. Comm.* (2001), 91 Ohio St.3d 98, 742 N.E.2d 622.

{¶ 8} In *Welker,* the claimant's left thumb was almost completely severed in an industrial accident. However, after two surgeries, his thumb was successfully reattached at the same site. The claimant also recovered most of the thumb's functionality. The claimant sought a scheduled-loss award under R.C. 4123.57(B) based on "the amputation of the total left thumb." The commission denied the award and that decision was upheld by this court. On further appeal to the Supreme Court of Ohio, that court saw the central question as "[s]hould claimant's eligibility for his scheduled-loss award be determined as of the time he was injured or from the point of reattachment and recovery." The court found in favor of the latter view. Id. at 100, 742 N.E.2d 622. Because the claimant's thumb was successfully reattached, he was not entitled to a scheduled-loss award for the loss of the thumb. The *Welker* court also noted that reattachment

"eliminates the element of disfigurement which probably played a part in the creation of the scheduled-loss concept." Id. at 104, 742 N.E.2d 622.

{¶ 9} The facts presented in the case at bar bring two factors into play that were not present in *Qiblawe* or *Welker:* (1) relator's surgical amputation and reattachment involved two different extremities and (2) relator was not separately compensated for the loss of her thumb. We find that these factual differences require a different outcome than those reached by the courts in *Qiblawe* and *Welker*.

{¶ 10} The underlying legal principle in both *Welker* and *Qiblawe* is that a claimant's eligibility for a scheduled-loss award is determined "from the point of reattachment and recovery." *Welker* at 100, 742 N.E.2d 622. Here, after reattachment and recovery, relator was missing two fingers on her left hand and her left great toe. Both extremities suffered a disfigurement. Relator received a scheduled-loss award for the loss of the two fingers on her left hand in an amount equal to what she would have received for the loss of her left hand. R.C. 4123.57(B). Relator is entitled to this award despite the transplant of her left great toe on the site of her left thumb. However, after reattachment and recovery, she is now without her left great toe. Therefore, relator is also entitled to a scheduled-loss award for the loss of her left great toe pursuant to R.C. 4123.57(B). The commission abused its discretion when it denied relator that award.

{¶ 11} This result is completely consistent with both *Welker* and *Qiblawe*. After reattachment and recovery, the claimant in *Welker* was not entitled to a scheduled-loss award because his severed thumb was successfully reattached and functional. After reattachment and recovery, the claimant in *Qiblawe* was entitled to a scheduled-loss award for only one finger because the surgically amputated finger was successfully reattached and functional. Here, relator is entitled to a scheduled-loss award for both the loss of her two fingers on her left hand and the loss of her left great toe because she is missing these digits after reattachment and recovery. Therefore, the commission abused its discretion when it denied relator a scheduled-loss award for the loss of her left great toe. For this reason, we sustain relator's objections.

{¶ 12} Following an independent review of this matter, we adopt the magistrate's findings of fact but not his conclusions of law. For the reasons stated herein, we modify the magistrate's decision, grant relator's request for writ of mandamus, and order the commission to enter an order granting relator a scheduled-loss award for the loss of her left great toe.

Objections sustained
and writ of mandamus granted.

BROWN and FRENCH, JJ., concur.

654

*APPENDIX A*

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

The State ex rel. Mast,

v.

Industrial Commission of Ohio et al.

No. 10AP–278

MAGISTRATE'S DECISION

Rendered on January 24, 2011

IN MANDAMUS

{¶ 13} In this original action, relator, Leona A. Mast, requests a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying her request for R.C. 4123.57(B) scheduled-loss compensation for the surgical amputation of her left big toe and to enter an order granting compensation.

Findings of Fact:

{¶ 14} 1. On April 7, 2004, relator sustained traumatic amputations of her left thumb, left index (second) finger, and left long (third) finger. On the date of injury, relator was employed as a saw operator for respondent Grand View Ready Cut, a state-fund employer.

{¶ 15} 2. On April 28, 2004, the Ohio Bureau of Workers' Compensation issued an order allowing the industrial claim (No. 04–339418) for amputations of the left thumb, left second finger, and left third finger. The bureau order further states:

The injured worker has sustained a total loss of the left hand due to 100 percent loss of the left thumb, 100 percent loss of the left second finger and 2/3 loss of the left third finger.

{¶ 16} 3. The bureau's April 28, 2004 order was not administratively appealed.

{¶ 17} 4. Based on its order, the bureau paid 175 weeks of R.C. 4123.57(B) scheduled-loss compensation for the loss of the left hand.

{¶ 18} 5. On September 9, 2004, John C. Pedersen, M.D., completed a C–9 requesting that the bureau authorize a left-great-toe-to-left-thumb transplant to be performed at Akron City Hospital.

{¶ 19} 6. On September 17, 2004, Sylvester Barczak, M.D., reviewed the C–9 request for the bureau:

Per review of the submitted medical, and acceptance of claim allowances, would approve the request for left great toe transplant to the left thumb to improve apposition of the digits and improve functionality of the hand.

{¶ 20} 7. In October 2004, relator underwent the surgical transplantation procedure.

{¶ 21} 8. Following the surgery, relator presented to Dr. Pedersen's office on several occasions for follow up. On the dates noted, Dr. Pedersen wrote:

[October 29, 2004] * * * Ms. Mast is now status-post toe to thumb. She is doing exceedingly well. She has no complaints. * * * The thumb is perfectly viable. * * *

[November 5, 2004] * * * Ms. Mast presents status-post toe to thumb transplant. * * * She is undergoing the range of motion involving the IP joint in addition to CMC joint. She continues to gain active motion in these areas. The thumb is 100% viable. No evidence of ongoing infection. The sutures are out today. * * *

[November 19, 2004] * * * Ms. Mast is now status-post toe to thumb. She now is doing motion on her thumb. She has nearly gained 20 degrees of motion at the IP joint. She is able to touch fingertip to ring. * * * * * *

[December 17, 2004] * * * Ms. Mast presents now with her toe-to-thumb transplant. She is doing exceedingly well with excellent motion and excellent bone-on-bone union noted on X-ray. She is to return to the office in another month and a half. She can start working on February 1, 2005.

[January 21, 2005] * * * The plan is to have her come back to the office in another 4–5 months for review of the excision of the serial skin graft. Further examination reveals excellent opposition of the thumb, both to this ring finger and small finger. * * *

{¶ 22} 9. On June 27, 2008, relator moved that her industrial claim be additionally allowed.

{¶ 23} 10. On July 18, 2008, the bureau mailed an order additionally allowing the claim for "amputation left big toe." Apparently, the bureau order was not administratively appealed.

{¶ 24} 11. On July 22, 2008, relator moved for an R.C. 4123.57(B) scheduled-loss award for the alleged loss of her left big toe.

{¶ 25} 12. Following a September 8, 2008 hearing, a district hearing officer ("DHO") issued an order denying relator's July 22, 2008 motion:

It is the order of the District Hearing Officer that the C–86 filed by the Injured Worker on 07/22/2008 is denied. The Injured Worker's request for a loss of use award for her left big toe is denied.

The Injured Worker sustained an injury that resulted in the 100% loss of her left thumb, 100% loss of her left second finger and a 2/3 loss of her left third finger. Based on this, she was awarded a 100% loss of use of her left hand. However, on 10/14/2004 the Injured Worker had her left great toe transferred to her left thumb area and now has a functional left thumb based on this transplant. She is currently requesting a loss of use award for her left big toe. However, the District Hearing Officer is not persuaded she is entitled to this award.

In *State ex rel. Qiblawe v. Industrial Commission,* the Injured Worker had her right long finger amputated as a result of a work accident. She then had her right index finger surgically removed and reattached at the long finger amputation site in order to close the gap. While she originally received a scheduled loss for the right long finger, she subsequently sought an additional scheduled loss award for her index finger. However, the Court held that the Injured Worker sought to completely eliminate the successful surgical reattachment of what became her long finger from the equation by requesting the second award. They noted that while the Injured Worker suffered two amputations, because of the reattachment she only had a loss of one digit. Thus, they denied her request. The District Hearing Officer finds this case is analogous to the current claim.

While the Injured Worker may have lost her left thumb in the accident, once the toe was successfully attached to the left thumb amputation site she no longer had the loss of the thumb. Thus, she should not be compensated for two digits while she has only lost one.

Therefore, the Injured Worker's request for a loss of use of the left big toe is denied.

This decision is based on the 04/28/2004 Bureau of Workers' Compensation order, the 10/14/2004 operative note, and *State ex rel. Qiblawe,* (2002) 96 Ohio St.3d 347 [2002-Ohio-4759, 774 N.E.2d 1215].

{¶ 26} 13. Relator administratively appealed the DHO's order of September 8, 2008.

{¶ 27} 14. Following an October 8, 2008 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order of September 8, 2008. The SHO's order explains:

It is the order of the Staff Hearing Officer that the Injured Worker's Motion, filed 07/22/2008, is denied.

As detailed in the District Hearing Officer's order, the history of this claim involves a traumatic amputation affecting several digits of the claimant's left hand. These amputations included a 100% loss of the left thumb. As a result of these amputations the claimant was granted a 100% loss of use award for her left hand.

Subsequently, a surgical amputation of the claimant's left great toe was approved and the left great toe was then implanted at the site of her amputated left thumb, thus giving her a functional digit at that site. The claimant has now requested that a scheduled loss award be granted for 100% loss of the left great toe due to amputation.

The District Hearing Officer denied the claimant's request, reasoning that this situation was analogous to that presented in *State ex rel. Qiblawe v. Indus. Comm.* (2002), 96 Ohio St.3d 347 [2002-Ohio-4759, 774 N.E.2d 1215]. The District Hearing Officer recited the history of *Qiblawe*, including the Court's conclusion that moving one digit to a different site did not result in the loss of two digits, but resulted in the loss of one digit. The District Hearing Officer concluded, based upon this reasoning, that the successful transplantation of the claimant's left great toe to her left thumb site resulted in the loss of only one digit, for which the claimant has been fully compensated through her scheduled loss award for loss of the left hand.

In affirming the District Hearing Officer's findings and order, the Hearing Officer finds that although there is no case law directly on point regarding a situation with the same facts as are found in this claim, the analogy drawn by the District Hearing Officer to the situation in *Qiblawe* is appropriate. Accordingly, the Staff Hearing Officer affirms the District Hearing Officer's decision to deny the request for a scheduled loss award for total loss of the left great toe.

{¶ 28} 15. On October 29, 2008, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of October 8, 2008.

{¶ 29} 16. On December 19, 2008, relator again moved for R.C. 4123.57(B) scheduled-loss compensation for the alleged loss of her left big toe.

{¶ 30} 17. Following a March 2, 2009 hearing, a DHO issued an order denying relator's December 19, 2008 motion:

The Injured Worker failed to meet her burden of proving she is entitled to a Scheduled Loss Award for the left great toe. This issue was previously addressed by a Staff Hearing Officer pursuant to the 10/08/2008 order. He denied an identical request. Thus, the issue is Res Judicata.

{¶ 31} 18. Relator administratively appealed the DHO's order of March 2, 2009.

{¶ 32} 19. Following an April 6, 2009 hearing, an SHO issued an order stating:

The Injured Worker previously requested payment of a scheduled loss award for total loss of the left big toe. That request was denied by District Hearing Officer's order issued 9/08/2008. That order was administratively affirmed. The Injured Worker has now filed a second motion requesting the same relief.

It is the finding of the Staff Hearing Officer that the issue regarding payment for total loss of the left big toe is res judicata. Further, the Injured Worker has not presented any valid basis for re-addressing this issue under the Industrial Commission's continuing jurisdiction pursuant to R.C. 4123.52. Accordingly, the Staff Hearing Officer finds that the Industrial Commission is without jurisdiction at this time to re-address this issue.

{¶ 33} 20. On April 24, 2009, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 6, 2009.

{¶ 34} 21. On March 29, 2010, relator, Leona A. Mast, filed this mandamus action.

Conclusions of Law:

{¶ 35} The issue is whether *State ex rel. Qiblawe v. Indus. Comm.*, 96 Ohio St.3d 347, 2002-Ohio-4759, 774 N.E.2d 1215, compels the commission's denial of relator's motion for R.C. 4123.57(B) scheduled-loss compensation for the alleged loss of relator's left big toe.

{¶ 36} Finding that *Qiblawe* is dispositive, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 37} R.C. 4123.57(B) states in part:

In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code per week and shall continue during the periods provided in the following schedule:

For the loss of a first finger, commonly known as a thumb, sixty weeks.

* * *

If the claimant has suffered the loss of two or more fingers by amputation or ankylosis and the nature of the claimant's employment in the course of which the claimant was working at the time of the injury or occupational disease is such that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds the normal handicap or disability resulting from the loss of fingers, or loss of use of fingers, the administrator may take that fact into

consideration and increase the award of compensation accordingly, but the award made shall not exceed the amount of compensation for loss of a hand.

For the loss of a hand, one hundred seventy-five weeks.

\* \* \*

For the loss of a great toe, thirty weeks.

{¶ 38} In *Qiblawe,* the claimant, Tracy Qiblawe, sustained the amputation of her right long finger in an industrial accident. She received a scheduled-loss award for the loss of her long finger under R.C. 4123.57(B).

{¶ 39} Later, on her doctor's recommendation, Qiblawe had her right index finger surgically removed and reattached to the long-finger amputation site so that small objects no longer fall through her hand.

{¶ 40} Qiblawe then sought an additional scheduled-loss award for her transplanted right index finger. The commission denied the motion, finding that Qiblawe still had a useful, viable index finger even though it was not at the original site.

{¶ 41} The *Qiblawe* court cited *State ex rel. Welker v. Indus. Comm.* (2001), 91 Ohio St.3d 98, 742 N.E.2d 622, which held that successful reattachment of a digit barred a scheduled-loss award under R.C. 4123.57(B).

{¶ 42} Relying on *Welker,* the *Qiblawe* court held that Qiblawe was not entitled to an award for loss of her index finger. The court reasoned:

Claimant seeks to completely eliminate successful surgical reattachment from the equation. Two amputations have resulted in the loss of only one digit. She has lost one digit but nevertheless wants compensation for two. Even if claimant's surgical-amputation rationale is given credence, the successful surgical reattachment at the long finger amputation site eliminates loss there, still leaving claimant entitled to just one award.

Id. at ¶ 5.

{¶ 43} Finding *Qiblawe* to be analogous, the commission, through the SHO's order of October 8, 2008, held that relator has not sustained the loss of her left big toe under R.C. 4123.57(B).

{¶ 44} Relator attempts to distinguish *Qiblawe* by pointing out that Qiblawe had her index finger surgically transplanted to another finger site while relator had a toe transplanted to a finger site. While it is indeed true that *Qiblawe* involved a finger transplant rather than a toe transplant, it is difficult for this magistrate to see this as a significant distinction. The fact remains that here, with respect to the left thumb and left great toe, there were two amputations, but only the loss of one digit. That is precisely the scenario in *Qiblawe.*

{¶ 45} Relator argues that she has undisputedly lost her left big toe and therefore she should be compensated for her loss. But her argument simply chooses to ignore what happened to the left big toe after it was surgically removed. The *Qiblawe* court makes clear that we cannot ignore the transplantation part of the surgical procedure in determining entitlement to an award under R.C. 4123.57(B).

{¶ 46} Relator also seems to suggest that the bureau's July 18, 2008 order additionally allowing the claim for amputation left big toe automatically compels an R.C. 4123.57(B) award for loss of the left big toe. The magistrate disagrees.

{¶ 47} The bureau's July 18, 2008 order adjudicated relator's June 27, 2008 motion for an additional claim allowance. Nothing in the order indicates that scheduled-loss compensation was put in issue by relator's June 27, 2008 motion or that the bureau was awarding scheduled-loss compensation as a result of the additional claim allowance. Clearly, the bureau's July 18, 2008 order does not automatically compel a scheduled-loss award for the left big toe regardless of the fact that the order recognizes that the left big toe was amputated.

{¶ 48} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

*s/s Kenneth W. Macke*
KENNETH W. MACKE
MAGISTRATE